IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| INTERNATIONAL SECURITY MANAGEMENT GROUP, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:06cv0456 ) |
| CHRISTOPHER SAWYER and CITADEL SECURITY SERVICES, LLC, | ) Judge Thomas A. Wiseman, Jr. ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff International Security Management Group, Inc. ("ISMG") filed its Complaint against Defendants Christopher Sawyer ("Sawyer") and Citadel Security Services, LLC ("Citadel") (collectively, "Defendants") on May 8, 2006 alleging, among other things, that Sawyer individually and through Citadel was in violation of certain restrictive covenants set forth in an employment agreement between Sawyer and ISMG, his former employer, dated 2003 but actually executed by Sawyer in 2005 ("Employment Agreement"). Among other requested relief, the Complaint seeks temporary, preliminary and permanent injunctive relief prohibiting Sawyer, individually or through Citadel, from further breach of the Employment Agreement. On May 9, 2006, a Temporary Restraining Order ("TRO") was entered (Doc. No. 10), and on June 6, 2006, a Preliminary Injunction was entered and the TRO dissolved. (Doc. No. 26.)

Before the Court now is Defendants' Motion to Modify Preliminary Injunction. (Doc. No. 28.) Plaintiff ISMG has filed a Response in opposition to the motion (Doc. No. 37) and Defendants have filed a Reply (Doc. No. 39). Both parties have filed exhibits and supporting Declarations. As set forth below, the Court will grant in part and deny in part the Defendants' Motion.

**I. DISCUSSION**

    *A. Requested Modification of Paragraph 2 of Preliminary Injunction*

In its application for a TRO, ISMG requested that Defendants be restrained "from any solicitation of any existing or prospective client of Plaintiff with whom Defendant Sawyer had contact or administrative responsibility while employed with Plaintiff." (Doc. 2, at 2.) Judge Haynes granted the TRO as to that

provision, and ISMG's request that the TRO be converted to a Preliminary Injunction was ultimately granted as to that provision as well. The Preliminary Injunction, however, actually states as follows:

> Defendants are hereby preliminarily enjoined from **contacting**, soliciting, or providing private security services for any current clients of ISMG, including the eight buildings in Tennessee for which ISMG presently provides private security services, for one year from the effective date of Defendant Sawyer's resignation from ISMG.

(Doc. 26, ¶ 2, at 4 (emphasis added).)

Defendants now point out that the petition for a TRO, and thus the TRO itself, did not mention "contacting" ISMG's current clients, and the Employment Agreement itself likewise bars solicitation of current clients but does not mention simply contacting them. In its Response, ISMG acknowledges that "it cannot preclude Defendants from engaging in strictly casual, social contacts with . . . current or prospective client[s] of ISMG's." (Doc. No. 37, at 1.) ISMG argues, however, that the term "contact" in the context of the Court's earlier opinion "refers, not to casual or social contacts, but to 'active[ ] courting,' 'soliciting,' 'communicating,' and 'active . . . negotiat[ing].' " In addition, ISMG argues that the type of contact to which Defendants refer as "mere contact" includes contact at industry trade group meetings which Defendant Sawyer and Rob Cesternino attend for the purpose of discussing business with Carolyn Riddle and Connie Carpenter, and other property managers with whom Defendant Sawyer is already acquainted, and "drum[ming] up business on behalf of Citadel."

It is fairly obvious to the Court that "contact" in this case is likely to lead to a dispute between the parties regarding whether such contact qualifies as solicitation as well, and that there is a very fine line between the two. Nonetheless, Defendants are correct that the Employment Agreement and the original TRO did not expressly prohibit "contacts" with former or prospective clients, and that restraints on competition are to be strictly construed in favor of the employee. Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 678 (Tenn. 2005). Consequently, Defendants' request to modify the Preliminary Injunction to remove the prohibition against "contact" is well taken and shall be granted.

### B. *Requested Clarification or Further Modification of Paragraph 2*

Defendants' second requested modification is somewhat unclear. Although Defendants posit that ISMG has no protectable interest in the Tennessee and Kentucky "Territory" outside of Davidson and Rutherford County, Tennessee, they are requesting that the Court simply modify the Preliminary Injunction to make it clear that the scope of the injunction covers only those "current clients" located in the eleven

2

counties in Tennessee and one in Kentucky specifically designated by the Plaintiff as the covered "Territory." (Doc. No. 28, at 3.) ISMG, however, apparently construes Defendants' motion as requesting that the scope of the injunction be limited to current clients located in Davidson and Rutherford Counties in Tennessee and Jefferson County, Kentucky. (See Doc. No. 37, at 3.) ISMG also argues that the injunction should be construed to bar Defendants from soliciting *prospective* clients in the referenced Territory.

First, with respect to the applicable Territory, the Court is perplexed as to why the requested modification or clarification would be necessary. Clearly, the only Employment Agreement at issue is the one drafted in 2003 and actually signed by Defendant Sawyer in 2005 (the "2003 Employment Agreement"). The Territory covered by the injunction is co-extensive with that identified in the 2003 Employment Agreement. Defendants' request for clarification should be satisfied with that sentence. To the extent Defendants are requesting a modification, the same will be denied.

However, the fact that the Preliminary Injunction only speaks to "current clients" does not necessarily mean Defendants are not also restrained from soliciting "prospective" clients within the subject Territory. The Employment Agreement clearly prohibits solicitation of prospective clients. In its Memorandum Opinion, the Court found that ISMG had an enforceable and protectable interest in prospective clients, as that term is narrowly defined by the Employment Agreement. However, the only evidence concerning solicitation of prospective clients presented at the hearing concerned the Financial Center. For reasons set forth in the earlier Memorandum Opinion, the Court did not enjoin Defendants from entering into a contract with the Financial Center. No reasons were presented for addressing the solicitation of other prospective clients within the scope of the Preliminary Injunction, so the Preliminary Injunction is silent as to that issue. The Court will not revisit it now, but the parties should understand that the Preliminary Injunction obviously does not supersede the Employment Agreement, whose terms remain in effect regardless of whether the Preliminary Injunction addressed each and every one of those terms.

### C.  *Requested Modification of Paragraph 1 of Preliminary Injunction*

The first paragraph of the Preliminary Injunction states in pertinent part: "Defendants are hereby preliminarily enjoined from continued use of any of ISMG's pricing information[.]" (Doc. No. 26, ¶ 1, at 4.) Defendants contest the Court's finding that Defendants used some of ISMG's pricing information in developing Citadel's proposal to the Financial Center, and therefore request that the above-cited sentence be modified

3

to delete the reference to "continued use" of that information. Instead, Defendants request that the injunction prohibit the use of any of ISMG's pricing information.

In support of their contention, Defendants reference Defendant Sawyer's testimony at the Preliminary Injunction hearing at which he gave information to Rob Cesternino concerning local wages for various positions.[1] Defendants assert that "remembered pricing information" is not protectable confidential information. (Doc. No. 28, at 4 n.3 (quoting Venture Express, Inc. v. Lilly, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998).) ISMG responds that the Court's factual findings that Defendants did use some of ISMG's confidential business information were based upon the credibility of witnesses and the documentary evidence in the record and thus are entitled to deference.

It is within this Court's discretion to determine how much deference to accord its own findings. In this instance, it appears Defendants are correct that the testimony adduced at the hearing indicates that the information provided by Sawyer and actually used by Cesternino in the Financial Center proposal was limited to generic local wages information, which Tennessee law does not protect as confidential business information. See Venture Express, 973 S.W.2d at 606 (citing cases).

While the testimony was clear that Defendant Sawyer conveyed ISMG's confidential pricing program and other confidential pricing information to Rob Cesternino in November 2005, the Court is not aware of any testimony at the hearing demonstrating that Cesternino and Sawyer used that information in developing Citadel's proposal documents. In any event, regardless of whether the Preliminary Injunction provision at issue contains the word "continued," Defendants are prohibited from the use of any of ISMG's confidential pricing information. The requested modification will be granted.

### D. *Requested Modification of Bond Requirement*

In its Memorandum Opinion, the Court stated that because the temporary restraint at issue would not cause any discernable monetary damages to Defendants, ISMG would be permitted to retire or withdraw its pre-existing $10,000 bound. (Doc. 25, at 27; see also Doc. No. 26, at 4.) Defendants now take issue with that decision, claiming that they lost the security center contract with the Financial Center as a result of entry of

---

[1] Defendant Sawyer's actual testimony at the hearing regarding his involvement in the preparation of the Financial Center proposal was that Rob Cesternino asked him "the questions on pricing," and he provided the references as well. (Doc. No. 31, Transcript at 127.) When asked more specifically what type of pricing information, Sawyer stated that he provided information about standard local wages. (Transcript at 128.)

4

the TRO and consequently lost an estimated $10,000 net annual profit. Citing Moore's Federal Practice (in a footnote), Defendants contend that, "[i]n the absence of a bond, a party may not be able to recover damages incurred in the wrongful issuance of a restraining order or temporary injunction." 13 J. Moore, Moore's Fed. Practice § 65.53, at 65–99 (3d ed. 2006). In response, ISMG argues that (1) Defendants' damages claim is speculative and unsupported by any evidence; (2) the TRO did not prevent Defendants from entering into security services contracts, and the scope of the instant injunction does not extend to the Financial Center; and (3) Defendants wrongfully solicited the Financial Center contract in the first place and should be estopped from claiming any damages in relation to the loss of that contract. (Doc. No. 37, at 5.)

The Court finds that ISMG's claim that Defendants were not prohibited by the TRO from entering into security contracts, thus insinuating that the TRO did not bar the Financial Center contract, is disingenuous at best. Judge Haynes expressly restrained Defendants from entering into any contract for services at any building managed by Colliers Turley Martin Tucker. Regardless, the preliminary injunction itself did not prohibit Defendants from entering into the Financial Services contract, and no actual proof of damages has been presented. The decision whether to require a bond is clearly within the Court's discretion, Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995), and the Court will exercise that discretion here to deny the motion to modify the bond requirement.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Modify Preliminary Injunction will be granted in part and denied in part. An appropriate Order will enter.

                                                    Thomas A. Wiseman, Jr.
                                                   Senior U.S. District Judge